

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Leo J. Wise
Assistant United States Attorney
Leo.Wise@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4909
MAIN: 410-209-4800
FAX: 410-962-3091

April 8, 2014

Thomas C. Morrow
Shaw & Morrow, P.A.
Executive Plaza III, Suite 1200
11350 McCormick Road
Hunt Valley, Maryland 21031

Re: United States v. David Clark
Cr. No. CCB 13-0132

Dear Counsel

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 16, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

1. The Defendant agrees to plead guilty to Count 1 of the Indictment now pending against him, which charges him with extortion under color of official right, in violation of 18 U.S.C. § 1951 (the "Hobbs Act"). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. First, Defendant was a public official.

   b. Second, Defendant obtained property from another with that person's consent.

1

    c. Third, the property was not lawfully due Defendant or his office.

    d. Fourth, Defendant obtained the property knowing that it was provided in return for official acts.

    e. Fifth, Defendant obtained the property in a manner that affected interstate commerce.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a 20 year term of incarceration, 3 years of supervised release and a $250,000 fine or twice the gross gain or loss caused by the offense, whichever is greater. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction

3

on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

U.S.S.G. §2C1.1

| | | |
|---|---|---|
| a. | Base Offense Level § 2C1.1(a)(1) | 14 |
| b. | Specific Offense Characteristics § 2C1.1(b)(1) (>1 extortion) § 2C1.1(b)(2) (> $1,000,000) | +2 +16 |
| | **Subtotal** | **32** |

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Accordingly, the ANTICIPATED adjusted offense level is**         **29**

4

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties reserve the right to make arguments related to the application of the 18 U.S.C. § 3553(a) factors at sentencing.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the guideline range and forfeiture and restitution. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Forfeiture

11. The Defendant understands that the Court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the Court will order the forfeiture of all property involved in the offense, including but not limited to the following: **a money judgment in the amount of $1,407,134.**

12. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

13. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

### Waiver of Further Review of Forfeiture

14. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Restitution

15. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Waiver of Appeal

16. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it **exceeds 108 months' imprisonment**; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is **below 87 months' imprisonment.**

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

17. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior

and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

18. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Leo J. Wise
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

May 30 2014
Date

David Clark

I am David Clark's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5/30/14
Date

Thomas Morrow, Esq.
Charles N. Curlett, Jr.

9

## ATTACHMENT A
## STATEMENT OF FACTS

It is agreed and stipulated that were the Government to proceed to trial in this case, it would prove, beyond a reasonable doubt, by admissible testimonial and documentary evidence the guilt of the Defendant on the charges of bribery, in violation of 18 U.S.C. § 201.

The Defendant agrees to the truth of the summary of evidence set forth below and acknowledges that it does not represent all the evidence the Government would have produced had the case proceeded to trial.

1. David CLARK was a resident of Hydes, Maryland and a veteran of the United States Army.

2. CLARK served as Deputy Chief of Veterans Claims in the Maryland Department of Veterans Affairs (MDVA) prior to his retirement in January 2011. CLARK'S duties included submitting various claims and other documentation to the United States Department of Veterans' Affairs (VA) on behalf of veterans in Maryland who had appointed the MDVA as their representative. As part of those duties, CLARK submitted claims for compensation for veterans who had been exposed to Agent Orange during the Vietnam War and had subsequently developed diabetes. In support of these claims, CLARK submitted letters from physicians and, in some cases, copies of veterans' service records that CLARK certified were true and accurate. CLARK also submitted documents to the Maryland State Department of Assessments and Taxation (SDAT) in support of veterans' applications for property tax waivers.

3. While serving as Deputy Chief of Claims at MDVA, CLARK fraudulently obtained VA compensation for himself and others including J.A.B., R.G., P.H., R.S., S.T., K.R.W., K.W., D.B., J.W.B., R.B., P.D.C., K.C., C.G., L.H., G.H., C.S., and S.T. (hereinafter referred to as "claimants") by submitting false and fraudulent documents to the VA purporting to show that the claimants had been diagnosed with diabetes, and in some cases that the claimant had served in Vietnam when they had not in fact.

4. CLARK submitted false and fraudulent documents on behalf of the claimants in exchange for cash.

5. CLARK created fake doctor's letters for the claimants using the names and addresses of real doctors who were unaware of his conduct. These fake doctor's letters falsely stated that the claimants suffered from Type II diabetes and were currently taking insulin. Each letter stated that the diagnoses of Type II diabetes had been made a year or more prior to the date of the letter, which entitled each claimant to a retroactive lump-sum payment. The false assertion that the claimant was taking insulin increased the amount of compensation the VA paid the claimant.

10

6. CLARK created the counterfeit versions of Defense Department Form 215 (DD215) for himself and for J.A.B., R.G., S.A.T., K.A.W. and G.H. Form DD215 is an amendment to a veteran's service record that is used to correct errors or add missing information. CLARK created counterfeit DD215s for J.A.B., R.G., S.A.T., K.A.W. and G.H. as evidence that they had each served in Vietnam, which would qualify the claimants for compensation benefits for diabetes, when in fact they had not served in Vietnam. Specifically, these DD215s falsely stated that J.A.B., R.G., S.A.T., K.A.W. and G.H. had received various awards and decorations for their Vietnam service, including:

   a. For CLARK himself, the Purple Heart Medal, Air Medal, Army Commendation Medal, Republic of Vietnam Gallant Cross, and the National Defense Service Medal;

   b. For J.A.B., 6 months service in Vietnam and the Vietnam Service Medal;

   c. For R.G., Vietnam Service from October 8, 1962 to September 21, 1963 and the Vietnam Service Medal;

   d. For S.A.T., Vietnam Service from January 9, 1974 to August 9, 1974, the Vietnam Service Medal and the Air Force Achievement Medal;

   e. For K.A.W., Vietnam Service from September 10, 1964 to October 12, 1965, the Purple Heart Medal awarded in Vietnam October 1, 1965, the Vietnam Campaign Medal and the Vietnam Service Medal; and

   f. For G.H., the Combat Action Ribbon, the Republic of Vietnam Gallant Cross with palm, and the Purple Heart Medal (Vietnam).

7. On each of these DD215s, CLARK physically stamped the document with the following: "I, David R. Clark, Claims Chief, Maryland Department of Veterans Affairs certify that I have completed the VA prescribed training on certification of evidence for proof of service and that this is a true and exact copy of either an original document or of a copy issued by the service department or a custodian of records."

8. CLARK submitted the fake doctor's letters described above and, when a claimant had not served in Vietnam, the fabricated DD215 described above, to the VA, in order to obtain compensation for diabetes for the claimant which included lump sum payments and on-going monthly payments,

9. The claimants paid CLARK half of the retroactive lump sum payment they received in cash or some other amount of cash in exchange for his preparation and submission of false documents on their behalf in his position as Deputy Chief of Veterans Claims at the MDVA. These payments were made in unmarked envelopes, at MDVA Offices in Bel Air, Maryland and at the Fallon Federal Building in Baltimore, Maryland, and at other locations.

11

10. CLARK provided R.G. and R.S. with fake doctor's letters stating that they had been diagnosed with neuropathy, a condition associated with diabetes, and for which they could and did receive additional compensation.

11. CLARK submitted, on behalf of those claimants that owned homes in Maryland, false certifications to the SDAT that the filers were entitled to a property tax waiver from the State of Maryland due to a service-connected disability.

12. The total loss to the United Sates government caused by the false submissions made by CLARK that supported applications for benefits by the United States Veterans Administration is $1,151,219 and the total loss to the State of Maryland from false submissions made by CLARK that supported property tax waivers was $255,555.

13. The cash the claimants paid CLARK was not lawfully due him or his office.

14. CLARK obtained the cash knowing that it was provided in return for official acts.